# EXHIBIT E

**FORM 1.997.   CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

### I.   CASE STYLE

IN THE CIRCUIT/COUNTY COURT OF THE <u>SEVENTH</u>   JUDICIAL CIRCUIT,
IN AND FOR <u>VOLUSIA</u>   COUNTY, FLORIDA

<u>Brown and Brown Insurance Services Inc</u>
Plaintiff                                                     Case # _____
                                                              Judge _____

vs.

<u>Legacy Insurance Group LLC, Legacy Insurance Group 3 LLC, Nathan Gilbert Insurance Agency,</u>
<u>Matthew Cooper</u>
   Defendant

### II.   AMOUNT OF CLAIM

Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

☐ $8,000 or less
☐ $8,001 - $30,000
☐ $30,001- $50,000
☒ $50,001- $75,000
☐ $75,001 - $100,000
☐ over $100,000.00

### III.   TYPE OF CASE      (If the case fits more than one type of case,   select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

- 1 -

2024 13724 CICI

**CIRCUIT CIVIL**

☐ Condominium
☒ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence—other
       ☐ Business governance
       ☐ Business torts
       ☐ Environmental/Toxic tort
       ☐ Third party indemnification
       ☐ Construction defect
       ☐ Mass tort
       ☐ Negligent security
       ☐ Nursing home negligence
       ☐ Premises liability—commercial
       ☐ Premises liability—residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
       ☐ Commercial foreclosure
       ☐ Homestead residential foreclosure
       ☐ Non-homestead residential foreclosure
       ☐ Other real property actions

☐ Professional malpractice
       ☐ Malpractice—business
       ☐ Malpractice—medical
       ☐ Malpractice—other professional
☐ Other
       ☐ Antitrust/Trade regulation
       ☐ Business transactions
       ☐ Constitutional challenge—statute or ordinance
       ☐ Constitutional challenge—proposed amendment
       ☐ Corporate trusts
       ☐ Discrimination—employment or other
       ☐ Insurance claims
       ☐ Intellectual property
       ☐ Libel/Slander
       ☐ Shareholder derivative action
       ☐ Securities litigation
       ☐ Trade secrets
       ☐ Trust litigation

**COUNTY CIVIL**

☐ Small Claims up to $8,000
☐ Civil
☐ Real property/Mortgage foreclosure

☐ Replevins
☐ Evictions
    ☐ Residential Evictions
    ☐ Non-residential Evictions
☐ Other civil (non-monetary)

## COMPLEX BUSINESS COURT

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

**IV.     REMEDIES SOUGHT** (check all that apply):
☒ Monetary;
☐ Nonmonetary declaratory or injunctive relief;
☐ Punitive

**V.     NUMBER OF CAUSES OF ACTION:** [   ]
(Specify)

   4

**VI.     IS THIS CASE A CLASS ACTION LAWSUIT?**
    ☐ yes
    ☒ no

**VII.     HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
    ☒ no
    ☐ yes If "yes," list all related cases by name, case number, and court.

**VIII.     IS JURY TRIAL DEMANDED IN COMPLAINT?**
    ☐ yes
    ☒ no

**IX.     DOES THIS CASE INVOLVE ALLEGATIONS OF SEXUAL ABUSE?**
    ☐ yes
    ☒ no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature: <u>s/ Christopher Pardo</u>      Fla. Bar # <u>41824</u>
       Attorney or party          (Bar # if attorney)

<u>Christopher Pardo</u>        <u>11/15/2024</u>
 (type or print name)        Date



# LAURA E. ROTH
### CLERK OF THE CIRCUIT COURT

**SEVENTH JUDICIAL CIRCUIT - VOLUSIA  COUNTY**
**P.O. BOX 6043 DELAND, FLORIDA 32721-6043 · WWW.CLERK.ORG**

Filing #: ███████
Filer:Christopher Pardo
Payment:$440.00

1 Filing Fee: $400.00
2 Summons Issuance: $40.00
3 Complaints/Petitions Complaint: $0.00

*This document is a Clerk generated receipt.  This  page was not included in the original court document submitted by the filer.*

IN THE CIRCUIT COURT OF THE 7TH
JUDICIAL CIRCUIT IN AND FOR
VOLUSIA COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. _____

BROWN & BROWN INSURANCE SERVICES,
INC.,

      Plaintiff,

      v.

LEGACY INSURANCE GROUP, LLC,
LEGACY INSURANCE GROUP 3.0, LLC,
NATHAN GILBERT INSURANCE AGENCY,
and MATTHEW COOPER,

      Defendants.

_____/

## COMPLAINT

Plaintiff Brown & Brown Insurance Services, Inc. ("Brown & Brown" or "Plaintiff"), by and through its attorneys, Hunton Andrews Kurth LLP, hereby file this Complaint against Defendants Legacy Insurance Group, LLC, Legacy Insurance Group 3.0, LLC, Nathan Gilbert Insurance Agency ("Gilbert") (together, the "Legacy Defendants"), and Matthew Cooper ("Cooper") (Legacy Defendants collectively with Cooper, the "Defendants").

## INTRODUCTION

1.      Shortly after Matthew Cooper executed his employment agreement with Brown & Brown, both he and each of the Defendants began a knowing, systematic and willful campaign to violate the valid and enforceable restrictive covenants contained therein, including non-acceptance, non-solicitation and confidentiality provisions, which in the case of the Legacy Defendants, amounts to tortious interference with contract. All Defendants have also tortiously interfered with Plaintiff's prospective business relations.

1

**NATURE OF THE ACTION**

2.      In this action for breach of restrictive covenants, Plaintiff seeks damages and injunctive relief arising out of Cooper's intentional breaches of his contractual and other obligations to Brown & Brown, and further seek damages arising out of the Legacy Defendants' tortious interference with Cooper's contractual and other obligations to Brown & Brown.

3.      From approximately May 2021 until March 1, 2024, Cooper was employed by Hillco West Texas, LLC ("Hillco").[1]

4.      In or about 2021, Cooper entered into an employment agreement with Hillco, in which he agreed not to solicit Hillco's customers. *See* First Hillco Agreement, attached as Exhibit A, § 12.

5.      On November 15, 2023, Cooper was provided with a new agreement ("Second Hillco Agreement") providing him with a more favorable commission split.

6.      Accordingly, Cooper covenanted not to take any book of business away from Hillco, solicit Hillco's customers, or compete with Hillco in any territory in which Hillco conducted business following the termination of, or during, his employment with Hillco. *See* Second Hillco Agreement, attached as Exhibit B, at §§ 3, 5, 10-11.

7.      Effective on or about March 1, 2024, the majority of Hillco's assets were acquired by Brown & Brown.

8.      At the same time, Cooper signed a new employment agreement with Brown & Brown (the "Agreement"), thereby becoming a Vice President of Sales for Brown & Brown, a Florida company based in Daytona Beach. *See* Agreement, attached as Exhibit C.

---

[1] Following an asset purchase agreement by Brown & Brown, Hillco currently exists as HHill Holdings 1 LLC, HHill Holdings 2 LLC, and HHill Holdings 3 LLC. These entities' owner, Hunter Hill, is a Brown & Brown employee.

9.    In his roles on behalf of both Brown & Brown and Hillco, Cooper was responsible for quoting, placing, providing, servicing and/or renewing insurance products or services and prospecting new business.

10.    As a Vice President of Sales, Cooper was entrusted with Brown & Brown's confidential customer and business information.

11.    Upon information and belief, shortly after beginning work with Brown & Brown, Cooper began conspiring with the Legacy Defendants to poach the Plaintiff's customer accounts and employees.

12.    On or about May 29, 2024, just months after joining Brown & Brown, Cooper resigned from the Plaintiff's employ.

13.    Upon information and belief, Cooper immediately commenced work with the Legacy Defendants.

14.    Since beginning work with the Legacy Defendants, upon information and belief, Cooper has solicited and accepted work involving no fewer than twenty-seven customer insurance policies he had previously serviced on behalf of the Plaintiff, using misappropriated confidential information misappropriated, to benefit the Legacy Defendants.

15.    Upon information and belief, Cooper has further violated his contractual obligations owed to Plaintiff by improperly using and/or disclosing Plaintiff's confidential customer and business information, and soliciting his former customers and colleagues.

16.    On or about July 29, 2024, Brown & Brown sent a letter to the Defendants (the "Cease & Desist Letter"), attached as Exhibit D, informing each of them about the nature and extent of Cooper's violation of his contractual obligations and demanding that he cease and desist from further violations of his contractual agreements.

17.     None of the Defendants provided any response to the Cease & Desist Letter.

18.     Upon information and belief, Cooper continued to violate his contractual obligations to the Plaintiff at the Legacy Defendants' behest, including by causing the Plaintiff's clients to cancel at least fifteen insurance contracts in order to secure coverage by the Legacy Defendants.

19.     Moreover, upon information and belief, Cooper successfully solicited his former Brown & Brown colleague Westyn Swenson ("Swenson") to likewise violate his contractual obligations to the Plaintiff on behalf of the Defendants.

20.     Upon information and belief, Cooper's solicitation of Swenson on behalf of the Legacy Defendants occurred following Cooper's receipt of the Cease and Desist Letter.

21.     The Defendants' actions have caused Brown & Brown significant economic and non-monetary harm, which will continue unless they are enjoined from their ongoing unlawful conduct.

## PARTIES

22.     Brown & Brown is incorporated and maintains its principal place of business in Daytona Beach, Volusia County, Florida, from which it provides employees with numerous services and products, as detailed below.

23.     As a national supplier of insurance products and services based in Florida, Brown & Brown also transacts significant business in the state of Florida.

24.     Upon information and belief, Cooper is an adult resident of the state of Texas.

25.     Upon information and belief, Legacy Insurance Group, LLC, is a Florida Limited Liability Company with a principal place of business in Saint Johns, Florida.

26.     Upon information and belief, Legacy Insurance Group 3.0, LLC, is a Texas Limited Liability Company with a principal place of business in Childress, Texas.

27.     Upon information and belief, Nathan Gilbert Insurance Group is a Texas Limited Liability Company with a principal place of business in Iowa Falls, Texas, and which also maintains a direct business relationship with Legacy Insurance Group, LLC, a Florida Limited Liability Company with a principal place of business in Saint Johns, Florida.

## JURISDICTION, VENUE, AND CONDITIONS PRECEDENT

28.     This Court has jurisdiction over this matter because the Plaintiff seeks damages in excess of $50,000.00, exclusive of attorneys' fees.

29.     The Defendants are subject to jurisdiction in Florida because they conduct business in Florida, including Volusia County, Florida, and caused injury in Volusia County, Florida, including by misappropriating information which is located therein.

30.     Upon information and belief, each of the Defendants is an interrelated business entity which has, together with the others, conspired to commit unlawful conduct as set forth herein, including in Florida.

31.     All conditions precedent to the commencement or maintenance of the actions alleged to have occurred or the occurrence of such has been waived by the Defendants' actions.

32.     The Plaintiff has performed all obligations under the contract alleged, or such performance has been waived by Cooper's breach of contractual or common law obligations.

33.     The Plaintiff has retained the undersigned attorneys, are required to pay them a reasonable fee, and are entitled to recover a reasonable fee according to the Agreement  and applicable law, including Section 542.335 of the Florida Statutes.

## **FACTUAL ALLEGATIONS**

*Plaintiff's Business*

34.    At all times relevant, the Plaintiff has been engaged in the business of quoting, placing, providing, servicing, and/or renewing insurance products.

35.    The Plaintiff's business model relies upon salespeople such as Cooper to prospect and manage client relationships.

36.    Accordingly, Cooper was given access to a considerable amount of confidential information and goodwill regarding the Brown & Brown's customer accounts during the term of his employment.

37.    Because Plaintiff sells directly to its customers, it views, *inter alia*, the names, price lists, profit margins, purchasing histories, and requirements of customers and potential customers and any hard or electronic documents that contain this information as confidential.

38.    Brown & Brown's customer relationships were created and strengthened through significant capital and human investment.

39.    Brown & Brown purchased certain client accounts and their associated confidential information—including client accounts associated with Cooper—from Hillco at great cost.

40.    In addition, Brown & Brown provided access to other accounts and confidential information associated therewith directly to Cooper once he began working for Brown & Brown.

41.    Brown & Brown's successful product and service sales are based, in substantial part, on confidential, proprietary, and trade secret information developed and used by Brown & Brown, as well as trade secrets not disclosed to the general public or to Brown & Brown's competitors, making this information extremely valuable.

***Cooper's Employment with the Plaintiff***

42.　　From May of 2021 to March 1, 2024, Cooper was employed by Hillco.

43.　　In or about 2023, Hillco began discussing the possibility of entering into an asset purchase agreements with Brown & Brown (the "APA").

44.　　In or about February of 2024, Cooper and other key Hillco employees, including Swenson, traveled to Orlando, Florida in anticipation of becoming Brown & Brown employees.

45.　　Effective March 1, 2024, Hillco entered into the APA with Brown & Brown.

46.　　In accordance with the APA, Hillco, *inter alia*, agreed to assign its employees' restrictive covenants to Brown & Brown and to subsequently take all reasonable measures to enforce the terms of Hillco's restrictive covenants with its employees.

47.　　On or about March 1, 2024, in conjunction with the sale of assets between Hillco and Brown & Brown, and his commencement of employment with Brown & Brown, Cooper executed the Employment Agreement with Brown & Brown attached as <u>Exhibit C</u>, and thus became a Vice President of Sales for Brown & Brown.

48.　　As a Brown & Brown employee, Cooper had access to trade secrets and confidential information which was subject to use in accordance with policies developed in Florida.

49.　　Cooper was further subject to a reporting and strategic decision-making structure which included individuals based in Texas, Minnesota, and Florida.

50.　　Cooper also gained the benefit of human resources, financial, accounting, tax, auditing, marketing, advertising, research, compliance, purchasing, procurement, databases, and systems, services, technologies, and networks which are based in Florida.

51.    Cooper's duties for, and obligations to, Brown & Brown encompassed, *e.g.*, quoting, recommending, placing, providing, servicing and renewing: (i) employer-sponsored benefits accounts with programs such as group life, health, dental, long-term care, and ancillary benefits; (ii) insurance procedure for individuals, such as life, health, annuities, long-term care, and ancillary benefits; (iii) services provided to clients directly or through third-party services providers relating to risk management, loss control, compliance, consulting, claims analysis, insurance program administration, enrollment services, COBRA, Section 125 Cafeteria Plan, Health Savings Account (HSA) Plans, Health Reimbursement Arrangement (HRA) Plans, Health Flexible Spending Account (FSA) Plans, and/or Premium Reimbursement Arrangement (PRA) Plans, including preparation, review, and/or filing of IRS Form 5500s, and referrals to on-site medical clinics, attorneys, or other third-party service providers; (iv) commercial or personal lines of property and casualty insurance products; and (v) commercial or individual bond or suretyship products.

52.    In order to fulfill his responsibilities to Brown & Brown, Cooper was entrusted with and had access to Brown & Brown's confidential, proprietary, and trade secret information, including financial information, sales information, sales and marketing strategy information, the identity and lists of actual and potential customers, profit margins, purchasing histories and requirements of customers and potential customers, marketing information, and other information regarding Brown & Brown's methods, processes, services, customers, operations and business, and information regarding the insurance products required and/or preferred by various of Brown & Brown's customers.

53.    Cooper was advised of his responsibilities by Brown & Brown, such that he undoubtedly knew that this confidential information was not intended for dissemination.

8

54.     Cooper was entrusted with this confidential, proprietary, and trade secret information to create and strengthen customer relationships for Brown & Brown's benefit, and not for the benefit of Brown & Brown's competitors.

55.     From its headquarters in Florida, Brown & Brown took many steps to prevent the disclosure of its confidential, proprietary, and trade secret information to competitors and others, particularly during and after the course of the acquisition of Hillco's assets by Brown & Brown.

56.     Brown & Brown has promulgated numerous policies designed to protect this information, which are distributed to its employees.

57.     In addition, Brown & Brown employees receive training in information security, are reminded of these rules and policies, and must agree to comply with them every time the employee logs on to their computer.

58.     Moreover, Brown & Brown classifies its information based on its relative business value or sensitivity, and grants limited access to any information designated as confidential, proprietary, and/or trade secret information to employees who have a legitimate reason to access such information.

59.     In addition to these policies, Brown & Brown also requires employees to execute a written agreement providing, *inter alia*, for the protection and continued confidentiality of Brown & Brown's information and trade secrets, as well as Brown & Brown's goodwill, customer relationships and investment in its employees, during and after their employment.

60.     In Cooper's case, Brown & Brown required him to sign the Agreement before commencing work for Brown & Brown and thereby gaining access to its confidential and proprietary information, including those contained in its client databases and other servers, at least some of which are housed in Florida.

61.     The Agreement contains several restrictive covenants that, *inter alia*, prohibit Cooper from: (a) soliciting work from any of Brown & Brown's actual or prospective clients with which he had contact or regarding which he received confidential information during the two years prior to his the end of his employment with Brown & Brown (the "Restricted Accounts"); (b) accepting work from any of the Restricted Accounts or otherwise interfering or reducing in any manner with the business relationship between Brown & Brown and any Restricted Accounts; (c) misappropriating Brown & Brown's trade secrets or confidential information; (d) interfering or otherwise taking any action to cause any referral source, insurance carrier, wholesale broker, independent contract, or other person or entity with a business relationship with Brown & Brown to cease, reduce, or refrain from such business relationship; or (e) directly or indirectly inducing, soliciting, or attempting to influence any Brown & Brown employee to leave Brown & Brown, or otherwise assisting a competitor to hire such an employee.  Exhibit C, § 6 (a-c).

62.     Furthermore, Cooper agreed to provide a thirty-day notice period prior to the final day of his employment with Brown & Brown (the "Termination Date"), and to return all confidential and proprietary information and trade secrets of Brown & Brown upon the Termination Date or upon demand.  *Id.*, § 4(c).

63.     As set forth below, Brown & Brown is informed and believes that Cooper violated this thirty-day notice period upon his resignation by commencing work for the Legacy Defendants while still employed by Brown & Brown.  *Id.*

64.     The primary purpose of the restrictive covenants contained in the Agreement is to reasonably protect Brown & Brown's legitimate business interests, including but not limited to: (a) the retention of Brown & Brown's clients; (b) the preservation of Brown & Brown's trade secrets and other confidential business information and proprietary information, including

information used to assist in the retention of Brown & Brown's current clients, expand business with Brown & Brown's current clients, and secure prospective clients in the future; (c) the protection of Brown & Brown's investment (through Hillco) in training and enhancing Cooper's skill and experience; and (d) the protection of the goodwill Brown & Brown has created with its current clients and prospective future clients.

65.    Cooper freely and voluntarily entered into the Agreement, which is both valid and binding in that it: (a) is supported by adequate consideration; (b) does not impose any unreasonable economic hardships on Cooper; and (c) is not contrary to public policy.

66.    As a Vice President, Cooper had intimate knowledge of Brown & Brown's trade secrets and confidential and proprietary information, including without limitation: (a) sensitive customer and financial information; (b) strategic customer relationship management plans and processes; (c) sales territory designs, strategies and deployment; (d) customer buying patterns and preferences; (e) the identity and lists of actual and potential customers; (f) Brown & Brown's sales and marketing strategies for customers; and (g) specialized training and related material.

67.    Brown & Brown made reasonable efforts to keep this information secret, including but not limited to: (a) restricting access to this information from all individuals except those who worked for Brown & Brown and who had a need to use this information in the course of their authorized duties for Brown & Brown; (b) repeatedly advising its employees with access to this information that they must maintain its confidentiality; (c) requiring employees with access to this information to sign confidentiality agreements and restrictive covenants; and (d) maintaining this information on computer systems which have security features designed to protect this information from unauthorized disclosure and which specifically remind the employees with access to this information that such information is confidential and must be protected.

68.     The aforementioned trade secrets and other confidential and proprietary information were not (and are not) known to the general public, nor did the general public have access to them.  This information is critical to Brown & Brown's economic well-being, and if misappropriated, Brown and Brown's competitors could use this information to gain an economic and competitive advantage over Brown & Brown, thus damaging the Plaintiff.

69.     One of the primary objectives of Cooper's job was to help grow Brown & Brown's business in connection with its acquisition of Hillco, including by increasing and improving Brown & Brown's goodwill with its new clients.

70.     Brown & Brown furthered these objectives by encouraging Cooper to develop unique and personal relationships with its clients so that they would deal directly with Cooper to address their needs associated with Brown & Brown's business and services.

71.     During Cooper's tenure with Brown & Brown and Hillco, Cooper developed significant client relationships with a number of entities on Brown & Brown's behalf.

72.     As a result of these relationships, certain clients identified with Cooper and associated Brown & Brown's business (including through Hillco) with him.

73.     Brown & Brown encouraged continued development of these relationships at its' expense because Cooper had entered into restrictive covenants with Brown & Brown.

***Cooper's Post-Employment Misconduct; Legacy Defendants' Tortious Interference***

74.     On or about May 29, 2024, Cooper resigned from Brown & Brown. In accordance with the Agreement, he continued to provide services to Brown & Brown until approximately June 12, 2024.

75.     During this time, Cooper's supposed role was to help transition accounts to Brown & Brown—in particular, to Swenson.

76.     Upon information and belief, Cooper used this time to conspire with Swenson about soliciting Brown & Brown's clients on behalf of the Legacy Defendants.

77.     On June 12, Cooper ceased providing services to Brown & Brown, notwithstanding the fact that he remained employed by Brown & Brown until June 28, 2024.

78.     Upon information and belief, Cooper commenced employment as an insurance agent with the Legacy Defendants during the same June time period in which he remained employed by Brown & Brown.

79.     The Legacy Defendants compete directly with Brown & Brown by, among other things, selling insurance products similar to those offered by Brown & Brown.

80.     Upon information and belief, the Legacy Defendants are actively soliciting insurance clients, including Brown & Brown's clients who were directly serviced and pitched by Cooper, together with Cooper.

81.     Upon information and belief, Cooper shared the Agreement, including the details of the restrictive covenants, with the Legacy Defendants at or before the beginning of his employment with them.

82.     Upon information and belief, each of the Defendants immediately began conspiring to flout the restrictive covenants contained in Section 6(b) of the Agreement by soliciting work from Restricted Accounts (*e.g.,* Brown & Brown clients for which Cooper provided direct insurance services), accepting work provided by some such Restricted Accounts, and then asking the same Brown & Brown clients to execute a form falsely claiming that Cooper had not solicited their business ("Solicitation Disclaimer Form").

83.     Several current and former Brown & Brown clients informed the Plaintiff about the Defendants' usage of the Solicitation Disclaimer Form.

13

84.     In addition, insurance companies are required to obtain proof of new coverage in order to process insurance cancellations, such as a Certificate of Liability Insurance. In at least one case, when Brown & Brown asked a former client for a copy of their new Certificate of Liability Insurance, the client or, upon information and belief, the Defendants, redacted information regarding the insurance salesperson in order to conceal their unlawful solicitation and acceptance of work from Restricted Accounts.

85.     Upon information and belief, Cooper, in his directly competitive role with the Legacy Defendants, has also misappropriated and disclosed Brown & Brown's trade secrets, confidential information, and/or proprietary information to the Legacy Defendants, either directly or indirectly (including by and through its agents), to secure a competitive advantage over Brown & Brown in violation of his obligations to Brown & Brown.

86.     Upon information and belief, the Defendants have also used Brown & Brown's confidential and proprietary information to solicit the Plaintiff's customers in direct violation of Section 6(a) of the Agreement.

87.     Following notification to Brown & Brown about the use of the Solicitation Disclaimer Form and the loss of approximately twelve insurance contracts as a direct result of the Defendants' conspiracy to violate Cooper's restrictive covenants, on or about July 29, 2024, Brown & Brown sent the Defendants the Cease & Desist Letter attached as Exhibit D, notifying them about the restrictive covenants contained in the Agreement and Brown & Brown's awareness of their ongoing breach.

88.     When presented with evidence of their misconduct, the Defendants demonstrated an unwillingness to cease their unlawful conduct by, *first*, continuing to solicit the Plaintiff's clients and causing at least fifteen other insurance contracts to be canceled, and *second*, soliciting

14

Brown & Brown employee Swenson to join the Legacy Defendants and like Cooper, to begin poaching Brown and Brown's clients.

89.    Upon information and belief, Defendants also conspired with Swenson to pretend that he is providing services on behalf of an entity called "Swenson Insurance Group," which in actuality functions solely to contract as an independent contractor of the Legacy Defendants, in order to hide Cooper's solicitation of Swenson in violation of Cooper's legal obligations to Brown & Brown.

90.    Indeed, the address for Swenson Insurance Group LLC is essentially a vacant piece of land located along the side of a highway, approximately an hour away from Nathan Gilbert Insurance Agency. *Id.*

91.    The image of Swenson Insurance Group LLC's address, as shown in Google Maps, is captured below:



*See* Google Maps, Google Street View, Search: 4957 US 82 W, Nocona, Texas, 76255 https://www.google.com/maps/@ ▮▮▮▮▮▮▮ -

15

3a,75y,165.18h,91.59t/data=!3m7!1e1!3m5!1sDfUpvtXuzubST0sEiFxErg!2e0!6shtt
ps:%2F%2Fstreetviewpixels-pa.googleapis.com.

92.     Upon information and belief, as of the date of the filing of this Complaint, the
Defendants are violating, and continue to violate and/or tortiously interfere with, the restrictive
covenants contained in the Agreement and have made no effort to cease their impermissible
conduct.

93.     The Defendants' conduct has caused and will continue to cause Brown & Brown
significant economic and non-monetary harm unless enjoined.

**COUNT I**
**BREACH OF CONTRACT (Against Cooper)**

94.     Brown & Brown realleges and incorporates by reference paragraphs 1-15, 17-19,
34-47, 52-55, 60-66, and 70-93 of the foregoing allegations as if fully alleged herein.

95.     Cooper knowingly and voluntarily entered into a lawful and enforceable Agreement
with Brown & Brown.

96.     The Agreement contains several restrictive covenants that prohibit Cooper from (a)
soliciting work from any of the Restricted Accounts; (b) accepting work from any of the
Restricted Accounts or otherwise interfering or reducing in any manner with the business
relationship between Brown & Brown and any Restricted Accounts; (c) misappropriating Brown
& Brown's trade secrets or confidential information; (d) interfering or otherwise taking any action
to cause any referral source, insurance carrier, wholesale broker, independent contract, or other
person or entity with a business relationship with Brown & Brown to cease, reduce, or refrain
from such business relationship; or (e) directly or indirectly inducing, soliciting, or attempting to
influence any Brown & Brown employee to leave Brown & Brown, or otherwise assisting a
competitor to hire such an employee.  Exhibit C, § 6 (a-c).

16

97.     The primary purpose of these restrictive covenants is to reasonably protect Brown & Brown's legitimate business interests, including but not limited to (a) the retention of Brown & Brown's current clients and candidates; (b) the preservation of Brown & Brown's trade secrets, confidential information, and/or proprietary information, including information used to assist in the retention of Brown & Brown's current clients, expand business with Brown & Brown's current clients, and secure prospective clients in the future; (c) the protection of Brown & Brown's investment in training and enhancing Cooper's skill and experience; and (d) the protection of the goodwill Brown & Brown has created with its current clients and prospective future clients.

98.     The scope of the restrictive covenants is reasonable and necessary to protect the Plaintiff's legitimate protectable interests in its confidential, proprietary, and trade secret information, its current and prospective customer relationships, and the goodwill which is part of the same, and these provisions are valid and enforceable.

99.     Upon information and belief, Cooper breached his Agreement and its attendant restrictive covenants by (a) misappropriating Brown & Brown's trade secrets, confidential information, and/or proprietary information, (b) soliciting Brown & Brown's employees to work for the Legacy Defendants, including Swenson, and (c) directly or indirectly, attempting to divert business opportunities away from Brown & Brown for the benefit of the Legacy Defendants.

100.    Plaintiff has been damaged and irreparably harmed by Cooper's actions, and will continue to suffer harm if Cooper's contractual violations are allowed to continue, in an amount to be determined at trial.

**COUNT II**
**MISAPPROPRIATION**
**(Against All Defendants)**

101.     Brown & Brown realleges and incorporates by reference paragraphs 1-2, 10-15, 18, 34-41, 48, 51-61, 64-69, and 81-88 of the foregoing allegations as if fully alleged herein.

102.     Brown & Brown possesses confidential and proprietary information which is protected through policies, trainings, and security measures designed to protect against unauthorized disclosure, as described in greater detail above.

103.     Upon information and belief, Cooper improperly retained Brown & Brown's confidential and proprietary information following the end of his employment with Brown & Brown.

104.     Upon information and belief, Cooper has, and will continue to, disclose this information to the Legacy Defendants in order to gain a competitive advantage over Brown & Brown. In so doing, Cooper has misappropriated Plaintiff's confidential and/or proprietary information, and Cooper's misappropriation was without justification, excuse, or consent.

105.     Similarly, upon information and belief, the Legacy Defendants have knowing received and used the Plaintiff's confidential and proprietary information. Their knowing and unlawful use of this information was without justification, excuse, or consent.

106.     Brown & Brown has been damaged and irreparably harmed by the Defendants' actions and will continue to be damaged in an amount to be determined at trial if the Defendants continue to misuse Plaintiff's confidential information, including to solicit Plaintiff's clients.

## COUNT III
## TORTIOUS INTERFERENCE WITH CONTRACT
### (Against Legacy Defendants)

107.     Brown & Brown realleges and incorporates by reference paragraphs 1-2, 8-11, 12-21, 47-48, 52-55, 64-68, and 74-93 of the foregoing allegations as if fully alleged herein.

108.    Brown & Brown has an enforceable contractual relationship with Cooper, as set forth in the Agreement. *See* <u>Exhibit C</u>.

109.    Prior to entering into the Agreement, Hillco had two enforceable contractual relationships with Cooper, as set forth in the First and Second Hillco Agreements, which were assigned to Brown & Brown as part of the APA. *See* <u>Exhibits A and B</u>.

110.    These contracts required or require Cooper to refrain from soliciting Brown & Brown's clients and competing unfairly with Brown & Brown.

111.    At all times relevant to this Complaint, the Legacy Defendants had actual knowledge of one or more of these contractual relationships.

112.    On July 29, 2024, through the Cease & Desist Letter, the Legacy Defendants were provided with a copy of the Agreement, removing all doubt as to their knowledge of the Agreement's existence and contents, and thus, Cooper's obligations to Brown & Brown.

113.    Nonetheless, the Defendants conspired together to created the Solicitation Disclaimer Form, and to continue soliciting and accepting work from Brown & Brown's clients, including the Restricted Accounts.

114.    Moreover, following receipt of the Cease & Desist Letter, the Legacy Defendants upon information and belief induced Cooper to solicit Swenson to provide services for the Legacy Defendants.

115.    Cooper's solicitation of Swenson was also a knowing violation of, and interference with, the Agreement.

116.    The Legacy Defendants' interference with Cooper's contractual obligations to Brown & Brown was not privileged or in any way justified, and were conducted with the improper purpose of competing unfairly with Brown & Brown.

117.    Upon information and belief, the Legacy Defendants further exemplified their knowingly unjustified interference by requesting that clients associated with Restricted Accounts (i) execute the fraudulent Solicitation Disclaimer Form, and (ii) otherwise conceal their newfound working relationships from Brown & Brown, such as by redacting Certification of Liability Insurance forms.

118.    Accordingly, the Legacy Defendants intentionally and unjustifiably interfered with, and continue to interfere with, the Agreement by inducing Cooper to solicit Restricted Accounts and one or more Brown & Brown employees, including but not limited to Swenson.

119.    Brown & Brown has been damaged and irreparably harmed by the Defendants' actions and will continue to be damaged if the Defendants continue to tortiously interfere with Cooper's contract with Brown & Brown, in an amount to be determined at trial.

## COUNT IV
## TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONSHIPS
### (Against All Defendants)

120.    Brown & Brown realleges and incorporates by reference paragraphs 1-2, 8-11, 12-21, 47-48, 52-55, 64-68, and 74-93 of the foregoing allegations as if fully alleged herein.

121.    Brown & Brown had contractual relationships with the Restricted Accounts, as defined herein.

122.    Cooper knew about Brown & Brown's contractual relationships with the Restricted Accounts because of his direct role in arranging for the contracts between Brown & Brown and the clients constituting the Restricted Accounts, and based on the Restricted Accounts' Certificate of Liability Insurance forms.

123.    The Legacy Defendants knew about the contractual relationships between Brown & Brown and the Restricted Accounts because, upon information and belief, Cooper informed them of these relationships and conspired with the Legacy Defendants to interfere with them.

124.    Moreover, the relationships the Restricted Accounts had with both Brown & Brown and with Cooper, in his former roles on behalf of Hillco and Brown & Brown, would also be apparent from the Restricted Accounts' existing Certificate of Liability Insurance forms, which insurance companies generally review in the process of selling customers new insurance products.

125.    With general and specific knowledge of the Restricted Accounts and their contractual relationships with Brown & Brown, the Legacy Defendants intentionally and unjustifiably interfered with these contractual relationships by using Cooper and Brown & Brown's confidential information in order to induce the Restricted Accounts to cease doing business with Brown & Brown and begin doing business with the Legacy Defendants.

126.    Brown & Brown has been damaged and irreparably harmed by the Defendants' actions and will continue to be damaged if the Defendants continue to tortiously interfere with the contracts of their Restricted Accounts, in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Brown & Brown respectfully requests the following relief:

A.    Money damages in an amount believed to be in excess of $50,000;

B.    Equitable tolling of the expiration of the temporal restrictions in the Agreement until such time that Cooper begins to comply fully with his obligations under the Agreement;

C.    Injunctive relief in the form of a Court Order requiring Cooper to comply in full with the terms of his Agreement;

D.    Brown & Brown's reasonable attorneys' fees and costs incurred in prosecuting this litigation, to the extent permitted by law;

E.    Pre-judgment and post-judgment interest; and

F.    Such other relief to which Brown & Brown is legally entitled, including all additional relief that the Court deems just and equitable.

                                        ***

Date: November __, 2024                   Respectfully submitted,

                                          HUNTON ANDREWS KURTH LLP

                                          */s/ Christopher M. Pardo*
                                          Christopher M. Pardo (Fla. Bar No. 41824)
                                          cpardo@HuntonAK.com
                                          60 State Street, Suite 2400
                                          Boston, Massachusetts 02109
                                          Tel: (617) 648-2759
                                          Fax: (617) 433-5022

                                          *Attorney for Plaintiff Brown & Brown*
                                          *Insurance Services, Inc.*

█████DMS█████3

22